IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY ANDERSON, <br>    PLAINTIFF, <br><br> vs. <br><br> BARTLETT COCKE INDUSTRIAL, LLC AND BARTLETT COCKE GENERAL CONTRACTORS, LLC, <br>    DEFENDANTS. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. _____ <br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Anthony Anderson ("Plaintiff" or "Anderson") now files this Complaint against Defendant Bartlett Cocke Industrial, LLC and Bartlett Cocke General Contractors, LLC ("Defendants" or "Bartlett Cocke"). In support, Plaintiff states as follows.

### PARTIES

1. Plaintiff Anthony Anderson is a natural person who resides in Sweeny, Texas.

2. Defendant Bartlett Cocke Industrial, LLC, is a Texas limited liability company with a principal place of business in San Antonio, Texas. It may be served with process through its registered agent for service of process, Randall J. Pawelek, at 8706 Lockway, San Antonio, Texas, 78217, or wherever else he may be found. It may also be served as otherwise provided in Rule 4 of the Federal Rules of Civil Procedure.

3. Defendant Bartlett Cocke General Contractors, LLC, is a Texas limited liability company that has its principal place of business in San Antonio, Texas. It may be served with process through its registered agent for service of process, Jerome P. Hoog, at 8706 Lockway, San Antonio, Texas, 78217, or wherever else he may be found. It may also be served as otherwise provided in Rule 4 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

4. This case arises under the laws of the United States of America and, thus, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5. This Court has personal jurisdiction over Defendants as they have continuously and systematically done business in the state of Texas. They are sued here for conduct that occurred within the State of Texas. This Court has both general and specific jurisdiction over Defendants.

6. Venue is proper because the unlawful employment practices described in this Complaint occurred within this judicial district. Alternatively, all or a substantial part of the events or omissions giving rise to this Complaint occurred within this district.

## FACTS

7. Anthony Anderson is an African-American man who was a long-time employee of Bartlett Cocke. He worked there from around August 2011 until his termination in September 2019.

8. Anderson began his Bartlett Cocke employment as a Project Safety Manager. He was promoted in May 2013 to Regional Safety Manager, and then to Regional Safety Director in April 2019. At the time of his termination, Anderson was the Regional Safety Director for Bartlett Cocke's East Texas region.

9. His immediate supervisor was T. J. Rogers, who was white.

10. Anderson was the only African-American in senior management within the company, something that his white co-workers constantly reminded him about. Indeed, white employees frequently commented about Anderson's race. That was just part of the company culture. Anderson was the single-most senior African-American employee with the company. There were certainly none in his same position. Nor were there any at his level or higher. Every

other African-American employee with the company was below him in the hierarchy.

11.     Management regularly treated Anderson differently than white employees, including his fellow Regional Safety Directors.  For example, he had no office, but his white counterparts did.  Specifically, David Hofstadter, Regional Safety Director for Austin, was assigned an office.  Jeremy Smart, the Regional Safety Director for San Antonio, also had an office.  Those two peers are both white.  They each had an office.  Anderson did not.

12.     Likewise, Anderson was not given a company credit card to use; but his white counterparts were.  Defendants trusted Anderson only with a fuel card to use for gas.  All the other Regional Safety Directors received a company credit card to use.

13.     Anderson's white counterparts were offered ownership in the company; Anderson was not.

14.     In approximately November 2018, Anderson was doing his job at a construction site in Fort Bend County when he observed a white man – who turns out to have been employed by Jacobs, another contractor on the worksite – violating safety protocols by not wearing his hard hat properly.  Proper use of such safety gear was both an OSHA requirement and a requirement of the ultimate client on whose property they were doing the construction work.  Overseeing safety on the worksite was literally Anderson's job.  So he stopped the man and instructed him to comply with the safety requirements.  Instead of doing so, the man cursed at Anderson and physically assaulted him.  The assault itself violated the property owner/client's site rules, which prohibited violence at the worksite.

15.     Anderson complained internally about the assault and abusive conduct by the Jacobs employee, but Bartlett Cocke did not bother to investigate, let alone do anything about the white worker who had cursed at and assaulted its black employee.

16. In or around March or April of 2019, met with senior management to receive his annual review. In attendance were Marty Garza (the East Texas Regional Vice President) and Jason Atherton, Randy Sayers, and Chad Wermer. They gave him a glowing review, noting that he had the best safety record in the entire company.

17. At the end of the review, Anderson expressed concern that his complaint about the November 2018 incident with the Jacobs employee remained unresolved. He also complained that he was being held back from growing with the company and to become a shareholder because of his race. Anderson also told them about his observation of ongoing discrimination against black employees in general, such as when the company punished black workers for supposed infractions that were tolerated when white employees did the same thing.

18. Anderson also told them about the many times that he had been subjected to race-based comments, including:

- Being asked to give his thoughts about Barack Obama, the nation's first black president;

- Being asked to give his thoughts about white NFL player Riley Cooper's inappropriate public use of the word "n****r";

- Being embarrassed when white co-worker Randall Jay publicly derided his diction during a work meeting by asserting he could not understand "a goddamned word" that Anderson said;

- Being disrespected by white employee Randall Sayers (not the Randy Sayers in attendance at the review meeting), who told Anderson that he did not care what Anderson's job title was and that if she showed up at Sayers' job site he would put a shovel in his hand.

19. Randy (not Randall) Sayers typed notes about Anderson's race-based complaints as he made them.

20. Bartlett Cocke still did not investigate Anderson's complaints. To the contrary, the Defendants have insisted that Anderson made no such complaints during his review meeting.

4

21. Instead, Bartlett Cocke began retaliating against Anderson. To that end, on July 18, 2019, Anderson was presented with a back-dated write-up – the document bore a date of July 2, 2019 – for alleged poor performance and personal use of his vehicle. The write-up said that Anderson was not performing enough safety audits, a contrived complaint to the point of being laughable. Anderson had the best safety record of all the Directors in the company. He did not have any accidents or wrongful deaths in the area that he supervised. His white counterparts, by contrast, were overseeing work groups with numerous safety infractions and follow-up audits. Most of the time when Anderson performed audits, he would walk alongside his subordinate managers who would makes notes of (and enter in the computer) whatever safety audit information needed to be submitted. In other words, Anderson was performing the audits but they would ultimately be submitted by his underlings under their own names.

22. The write-up also accused Anderson of making improper personal use of his company vehicle. Anderson had had a company truck since he began with the company, and he had permission to use it for his daily commute and for personal use like minor errands. In fact, the vehicle use policy Anderson signed in 2014 applied to hourly workers using job-site trucks, not the company vehicles provided to managers and Directors as a job perk. Even so, it is well-known at Bartlett Cocke that white managers and Directors regularly used their company vehicles for hunting trips and personal trips to go out of town.

23. The July 2/July 18 write-up also asserted that Anderson did not work enough hours. This was just untrue. Since Anderson was denied a physical office (like his white counterparts had), Anderson would have to work out of his home office when he was not present on a construction site. Anderson's supervisors knew this. The only reason he was out of their sight was because Bartlett Cocke would not provide him an office. But working from home did not

mean that he was not working. And since his region had the best safety record, it seems evident that Anderson was actually doing his job more effectively than his white comparators.

24. After receiving the write-up and realizing the company had no intention of doing anything about his earlier discrimination complaints beyond targeting him for retaliation, Anderson's pre-existing anxiety and high blood pressure began to get out of control. His doctor diagnosed him with severe anxiety, high blood pressure, and depression, all of which are disabilities within the meaning of the Americans with Disabilities Act, as amended. As a result, Anderson took an approved medical leave of absence from July 30, 2019, until September 9, 2019. Anderson made Defendants' senior management aware of his disabilities and of his resulting need for the leave of absence. Anderson's leave of absence was approved by the company.

25. Anderson tried to return to work on September 9, 2019, and was fired that very day. The reason given was "job abandonment", which was patently untrue. Anderson immediately questioned this reason, at which point the company changed its excuse to 'personal use of his vehicle', supposedly for driving 3 miles to pick up a prescription. That was not true, either.

26. Shortly after firing Anderson, Bartlett Cocke replaced him with Jimmy Church, who is white.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

27. Anderson timely filed an EEOC charge on January 27, 2020.

28. The EEOC issued Anderson a Notice of Dismissal and Suit Rights on or about August 13, 2021.

29. This lawsuit has been filed within ninety days of Anderson's receipt of the right to sue letter.

30. Anderson has therefore exhausted all administrative remedies required under Title

VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

### **FIRST CAUSE OF ACTION (RACE DISCRIMINATION)**

31. Anderson is African-American and is thus within the class of persons protected by Title VII of the Civil Rights Act and 42 U.S.C. § 1981.

32. Bartlett Cocke was Anderson's employer.

33. During his employment with Bartlett Cocke, Anderson was subject to ongoing discrimination because of his race. This included race-based harassment by co-workers that was unwelcome and altered the terms and conditions of the workplace, as well as being subject to disparate conditions of employment (e.g., being denied an office, being denied a company credit card, not being awarded company stock).

34. Anderson was also terminated on September 9, 2019, and replaced by someone outside his protected class.

35. All of this constitutes prohibited race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, as well as 42 U.S.C. § 1981.

36. The discrimination described herein caused damage to Plaintiff.

37. Defendants violated Title VII and § 1981 with malice and/or with reckless disregard for Anderson's statutorily-protected rights. An award of punitive damages is therefore warranted.

### **SECOND CAUSE OF ACTION (RETALIATION)**

38. Anderson engaged in conduct protected by Title VII and § 1981 when he complained about race discrimination in or around March or April of 2019.

39. Defendants engaged in one or more materially adverse actions against Anderson, including the false write-up given to him on July 18, 2019 and the termination of his employment the day he tried returning from an approved medical leave of absence.

40. Defendants engaged in these materially adverse actions against Anderson because of his complaints about race-based discrimination.

41. This retaliation was done in violation of Title VII and § 1981.

42. The retaliation against Anderson caused him damage.

43. The retaliation was also committed with malice or reckless disregard for Anderson's statutorily-protected rights. An award of punitive damages is therefore warranted.

### THIRD CAUSE OF ACTION (FMLA RETALIATION)

44. Bartlett Cocke had fifty or more employees in or around July through September 2019. That included fifty or more employees within a seventy-five-mile radius of Anderson's primary worksite. Bartlett Cocke was therefore Anderson's "employer", as that term is defined by the Family and Medical Leave Act.

45. At that time, Anderson had more than one year of tenure with Bartlett Cocke.

46. In or around July 2019, Plaintiff was suffering from one or more "serious health conditions", as the FMLA defines that term.

47. Anderson requested an FMLA leave of absence for his own serious health condition.

48. Defendants issued Anderson a Designation Notice informing him that he was approved to take FMLA leave for his medical condition. The designation notice said that the leave was "July 29, 2019 through estimated September 4, 2019 (may be extended)."

49. Anderson's psychiatrist ended up extending the leave to have a September 9 return to work date. Anderson provided that information to his superiors at Bartlett Cocke.

50. When Anderson attempted to return to work on September 9, Defendants fired him. In doing so, they failed to reinstate Anderson to the same or equivalent position that he had held

prior to commencing the leave of absence. This violated the reinstatement requirements established by Congress via 29 U.S.C. § 2614(a)(1)(A), which in turn is made actionable under 29 U.S.C. § 2615(a).

51. Additionally, Defendants terminated Anderson because of his exercise of rights under the FMLA.

52. Anderson has been damaged by Defendants' violations of the FMLA and therefore seeks lost wages, interest, and as liquidated damages an amount equal to his lost wages and interest.

### FOURTH CAUSE OF ACTION (DISABILITY DISCRIMINATION)

53. Bartlett Cocke was Anderson's "employer", as that term is defined by the Americans with Disabilities Act.

54. In the summer of 2019, Anderson was suffering from anxiety, depression, and elevated high blood pressure, each of which constituted a disability within the meaning of the ADA Amendments Act.

55. Anderson took a leave of absence as an accommodation for his disability.

56. When Anderson tried returning to work, Defendants fired him.

57. They then replaced him with someone outside Anderson's protected class.

58. Based on the foregoing, Anderson alleges that Bartlett Cocke discriminated against him because of his disabilities and/or because he requested a leave of absence as an accommodation.

59. Anderson was damaged by this discriminatory conduct.

60. Defendants discriminated against Anderson because of his disabilities (or his request for accommodations) with malice and/or reckless disregard for his statutorily-protected rights. An award of punitive damages is therefore warranted.

## ATTORNEYS' FEES

61. If Plaintiff prevails, he is entitled to an award of reasonable and necessary attorneys' fees.

## JURY DEMAND

62. Plaintiff demands a trial by jury on all claims that may be tried to a jury.

## PRAYER FOR RELIEF

Plaintiff prays that Defendant be cited to appear and that, upon trial, the Court enter a judgment in his favor for the following:

   a. Back pay;
   b. Compensatory damages;
   c. Punitive damages;
   d. Interest pursuant to the FMLA;
   e. Liquidated damages pursuant to the FMLA;
   f. Reinstatement and/or front pay;
   g. Attorney's fees;
   h. Other taxable court costs; and
   i. Such other and further relief to which Anderson may be entitled.

Respectfully submitted,

DOW GOLUB REMELS & GILBREATH, PLLC

/s/ Andrew S. Golub
Andrew S. Golub
Attorney-in-Charge
S.D. Tex. No. 13812
Texas Bar No. 08114950
asgolub@dowgolub.com
2700 Post Oak Blvd., Suite 1750
Houston, Texas 77056
Telephone: (713) 526-3700
Facsimile: (713) 526-3750

ATTORNEYS FOR PLAINTIFF,
ANTHONY ANDERSON